**The GARLAND COMPANY INCORPORATED,**
Plaintiff,

v.

**ECOLOGY ROOF SYSTEMS CORPORATION,**
Defendant.

**No. 95–2092–JWL.**

United States District Court,
D. Kansas.

July 12, 1995.

Christopher F. Pickering, Michael P. Allen, G. William Quatman, Shughart, Thomson & Kilroy, Kansas City, MO, for plaintiff.

Michael Thompson, Brian D. Martin, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I.  Introduction

This case involves a claim by plaintiff The Garland Company Incorporated ("Garland") against defendant Ecology Roof Systems Corporation ("Ecology") for a violation of the Lanham Act, 15 U.S.C. § 1125(a). This matter is currently before the court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. # 6). In its motion, defendant contends that plaintiff fails to state a claim under the Lanham Act because its claim is based upon a single letter written by defendant's president which was delivered to one contractor and this single correspondence does not meet the "commercial advertising or promotion" requirement of the statute under which plaintiff brings its claim. The court agrees with the defendant and, as set out in more detail below, the motion to dismiss is granted.

### II.  Factual Background

Plaintiff and defendant are competitors in the roofing business. In its complaint, plaintiff alleges that, in April of 1994, plaintiff and defendant were competing for a project in Lawrence, Kansas, to provide roofing products to the Lawrence School District. Plaintiff further alleges that, in order to convince the Lawrence School District to utilize its products for the project, defendant sent a letter to one of the bidding contractors, Diamond Everly Roofing Contractors, on May 4, 1994, which purported to compare the physical characteristics of defendant's and plaintiff's roofing materials. Plaintiff alleges that the information in the letter furnished by defendant contained false and misleading representations of fact. Plaintiff further alleges that Diamond Everly furnished defendant's letter and data to the Lawrence School District and, as a result of this information, the District approved the use of defendant's roofing material over plaintiff's and awarded a contract to Diamond Everly, defendant's applicator.

### III.  Legal Standard

A court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir. 1991). The pleadings are liberally construed, and all reasonable inferences are viewed in favor of the plaintiff. Fed.R.Civ.P. 8(a); *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir.1993). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## IV. Discussion

■ Plaintiff brings its claim under the Lanham Act, 15 U.S.C. § 1125(a), which provides in pertinent part that:

> **(a) Civil action.** (1) Any person who, on or in connection with any goods or services, uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which—
>
> ....
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Defendant argues that plaintiff has failed to state a claim upon which relief can be granted because the isolated incident of the single letter upon which the claim is based is not sufficient to meet the "commercial advertising or promotion" requirement of 15 U.S.C. § 1125(a)(1)(B). Defendant contends that in order to state a claim under § 1125(a)(1)(B), the plaintiff must show that the alleged misrepresentations were disseminated sufficiently to constitute advertising or promotion in the relevant industry, and that its letter to the roofing contractor does not meet this requirement. Plaintiff, on the other hand, contends that the single letter containing alleged misrepresentations, which was delivered by defendant to a consumer or buyer, satisfies the "commercial advertising or promotion" requirement of the Lanham Act. This is a subject of few reported cases and appears to be a matter of first impression in the Tenth Circuit.

In attempting to decipher the meaning of the term "commercial advertising and promotion," the court first looks at the plain meaning of the statutory language. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985). Neither "advertising" nor "promotion" is specifically defined in the Lanham Act. However, in looking at their dictionary definitions in an attempt to discern the common understanding of these words, it is apparent that both "advertising" and "promotion" include a notion of public dissemination of information which goes beyond one isolated letter to a single potential customer. As defined by Webster's, advertising is "the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public esp. by means of printed or broadcast paid announcements" and "the business or profession of designing and preparing advertisements for publication or broadcast." Webster's Third New International Dictionary p. 31–32 (1986). "Promotion" is defined as "active furtherance of sale of merchandise through advertising or other publicity." *Id.* at 1815.

Although the conclusion that the plain meaning of the term "advertising" carries with it a public dissemination component is rather easily arrived at, the same conclusion is less obvious with regard to the term "promotion." However, it seems clear that the term carries with it the idea of an organized campaign or, perhaps, communications to a number of potential customers and it appears to be an unlikely term for Congress to have employed if it had intended to include isolated communications within the Act's purview. Nonetheless, because the plain meaning of "promotion" is less commonly established than that of "advertising", the court has also looked to the history of the legislation as a guide to see whether Congress may have intended "promotion" to include isolated communications. Unfortunately, however, the legislative history leading to the enactment of the section sheds little light on Congress' intent in this regard. That phrase was inserted by a 1988 amendment to the Lanham Act, and there is no legislative history which is helpful regarding Congress' intent concerning the meaning of "promotion".[1]

---

1. The original Act was interpreted by courts to extend to false advertising but to cover only a defendant's misrepresentations about his or her own products and not about competitors' products. *See Bernard Food Industries, Inc. v. Dietene Co.*, 415 F.2d 1279 (7th Cir.) *cert. denied* 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92 (1970). According to Senate Report No. 515, 100th Congr.,

Moreover, an analysis of the history and purpose of the Lanham Act itself is of little value in attempting to determine whether Congress meant any broader definition of "promotion" than that suggested by Webster's.[2]

As previously noted, case law analyzing the meaning of the phrase "commercial advertising or promotion" is sparse. This court has not been able to locate a single court of appeals opinion dealing squarely with the issue. However, several district court decisions have addressed the question. The most closely on point and best reasoned of these is *Medical Graphics Corp. v. SensorMedics Corp.*, 872 F.Supp. 643 (D.Minn. 1994). In that case, a medical device manufacturer, Medical Graphics, brought a § 1125(a) action seeking a preliminary injunction against a competitor, SensorMedics, challenging SensorMedics' disparagement of its products. Among the complained of representations were allegedly false representations to Medical Graphics' present and potential customers that Medical Graphics was having difficulties with the United States Food and Drug Administration, an allegedly false statement to a potential customer that Medical Graphics was actually a front for a German company and was in fact a German company "masquerading as an American company," and numerous other statements made by SensorMedics relating to the cost and performance of Medical Graphics' products. *Id.* at 645–46.

SensorMedics asserted that the statements plaintiff complained of fell outside the scope of the Lanham Act because they did not constitute "commercial advertising or promotion." SensorMedics argued that the statements were isolated incidents in which a sales representative allegedly made a statement, either orally or by letter, to a potential customer and that the statements were too sporadic to constitute "advertising or promotion." *Id.* at 650.

The court first noted that the conduct focused on by plaintiff clearly did not fall within the boundaries of a "traditional advertising campaign," but noted that that was not necessarily fatal to plaintiff's claim. The court adopted the four factor test for determining whether conduct constitutes "commercial advertising or promotion" set forth in *Gordon and Breach Science Publishers S.A. v. American Institute of Physics,* 859 F.Supp. 1521 (S.D.N.Y.1994), those factors being:

(1) the representations must be commercial speech;

(2) they must be made by a defendant who is in commercial competition with the plaintiff;

(3) they must be made for the purpose of influencing consumers to buy defendant's goods or services; and

(4) they must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

The *Medical Graphics* court noted that SensorMedics' argument focused on the fourth factor, the extent to which the representations were disseminated. The court stated that the level of circulation required to constitute advertising and promotion will vary from industry to industry and case to case. The court further stated that both advertising and promotion included a notion of the public dissemination of information. *Id.* at 650. The court concluded that the potential market for the products at issue, those being cardiopulmonary cardiac equipment, was large and the complained-of representations consisted, for the most part, of statements made by one of a handful of sales representatives to an individual potential cus-

---

2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 5577, the upper house committee through which the legislation passed concluded that the provision should also cover misrepresentations made defendants regarding competitors' products.

2. The original version of the Lanham Act was enacted to consolidate the federal trademark law, which was strewn out over different parts of the United States Code. Senate Report No.

1333, 79th Cong., 2d Sess. (1946), *reprinted in* 1946 U.S.C.C.S. 1274, states that the purpose of the trademark legislation was twofold, to protect the public and to protect the trademark holder. The report goes on to say that American commerce had changed since the last trademark law was enacted; that "[t]rade is no longer local, but is national;" and that "[m]arks used in interstate commerce are properly the subject of federal regulation". *Id.* at 1277.

tomer. Accordingly, the court held that, based on the nature of the industry, the statements made by the SensorMedics personnel to individual customers, which were not publicly disseminated, would not be actionable as "commercial advertising or promotion." This court finds the *Medical Graphics* analysis applicable to the facts of this case and consistent with the plain meaning of the statute.

Furthermore, in *American Needle & Novelty, Inc. v. Drew Pearson Marketing, Inc.,* 820 F.Supp. 1072 (N.D.Ill.1993), the district court held that an allegedly libelous private letter delivered to a single entity did not constitute a Lanham Act violation.[3] In analyzing whether the single letter constituted "advertising or promotion" under the Act, the court first looked to the dictionary definitions of the words "advertising" and "promotion" and concluded that both involved a concept of public dissemination of information. *Id.* at 1077. The court noted that to permit a single private correspondence to constitute "advertising" or "promotion" for purposes of Lanham Act liability would sweep within the ambit of the Act any disparaging comment made in the context of a commercial transaction. The court held that the plain meaning of the language did not permit such an interpretation. *Id.* at 1078. The court noted that its holding that a single, private correspondence was insufficient to find liability under the Lanham Act did not leave commercial entities free to defame one another on an isolated basis with impunity because the Lanham Act did not abolish the common law torts of defamation, interference with contractual relationships, or interference with business expectancy or economic advantage, which, among others, could be used to redress any harm caused by a defamatory statement made outside the public-oriented realm of advertising and promotion. *Id.* This court agrees with the *American Needle* court's conclusion, as well.

Plaintiff urges this court to adopt the analysis set forth by the court in *Mobius Management Systems, Inc. v. Fourth Dimension Software, Inc.,* 880 F.Supp. 1005 (S.D.N.Y. 1994). In that case, the court held that a letter sent by defendant to a prospective customer of plaintiff that compared the plaintiff's product to the defendant's product constituted commercial advertising or promotion within the meaning of the Lanham Act. Like the *Medical Graphics* court, the *Mobius* court utilized the four step analysis set forth in *Gordon and Breach* and noted that the difficult issue to be addressed was whether the letter was "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.* at 1020. The *Mobius* court concluded that the primary concern of Congress in requiring "commercial advertising or promotion" was to ensure that the Lanham Act did not reach speech that did not promote a competitor's product and that the purpose of the requirement was to ensure that political, social, informational or incidental representations were beyond the scope of the Act. *Id.* The court held that because the letter was aimed directly at a purchaser, indeed a purchaser that was about to buy plaintiff's product, the letter was "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.* The court relied not only on the fact that the relevant purchasing market was quite small, and thus tainting the goodwill of the plaintiff with one purchaser could easily affect another purchaser's view, but went on to state that "in this case the true relevant purchasing public consisted solely of [the individual customer]." *Id.* at 1021. Thus, the court held that because defendant's letter was presented directly to the individual customer, a company known to be in the market for the product, and was expressly designed to discourage the individual customer from purchasing plaintiff's product and buy its product instead, the letter constituted "commercial advertising or promotion." *Id.*

**3.** *American Needle* is arguably distinguishable from the present case because in that case the allegedly libelous or misleading letter was sent to a non-consuming licensor, while in the present case the letter was sent to a potential customer. However, in holding that the single letter did not constitute a Lanham Act violation, the *American Needle* court did not rely on this distinction but rather found that a single private correspondence did not constitute "commercial advertising or promotion." *American Needle,* 820 F.Supp. at 1078.

This court does not agree with the more expansive reading given to the term "commercial advertising or promotion" by the court in *Mobius*. In looking at the plain language of the statute, this court agrees with the *Medical Graphics* and *American Needle* courts that the term "commercial advertising or promotion" involves a notion of public dissemination of information. Nothing of the sort occurred here. The purchasing public for the competing roofing products at issue here is large, certainly nationwide in scope, and the communication in question is purely isolated, directed at one contractor on one job. Further, this court has found no indication that Congress, through its use of the language "commercial advertising or promotion," intended to extend Lanham Act coverage to every isolated alleged misrepresentation made to a potential customer by a business competitor. As noted by the *American Needle* court, multiple common law torts exist under state law to redress any such harm made outside the public-oriented realm of advertising and promotion. While this court does not purport to set forth a standard regarding the minimum amount of public dissemination required to trigger Lanham Act protection, the court does hold that the single correspondence alleged in this case does not constitute "commercial advertising or promotion" as defined in the Act.

## V. Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendant's motion to dismiss (Doc. # 6) is granted.

**IT IS SO ORDERED.**