CLASSIC COMMUNICATIONS, INC.;
Classic Telephone, Inc.; and Classic
Cable, Inc., Plaintiffs,

v.

RURAL TELEPHONE SERVICE CO.,
INC.; Vision Plus, Inc.; Larry E. Sevier;
Merlin Dennis; Barney Hickert; F.C.
Brungardt; Douglas Ziegler; Charley
Minium; Marion Otter; Glenn Lambert;
Robert E. McCall; Shane Brady; Kenneth
Clark; City of Hill City, Kansas;
City of Bogue, Kansas; City of Quinter,
Kansas; City of Morland, Kansas; City
of Norcatur, Kansas; City of Gorham,
Kansas; City of Damar, Kansas; City of
Palco, Kansas; and City of Logan, Kansas,
Defendants.

Civil Action No. 96–2166–DES.

United States District Court,
D. Kansas.

Jan. 30, 1997.

See also, 956 F.Supp. 896.

Victor A. Davis, Jr., David P. Troup, Weary, Davis, Henry, Struebing & Troup, Junction City, KS, Gordon D. Gee, Paul G. Schepers, Rachel H. Baker, Susan S. Goldammer, Seigfreid, Bingham, Levy, Selzer & Gee, Kansas City, MO, Cary Ferchill, Mark D. Goranson, Brian F. Antweil, Winstead, Sechrest & Minick, P.A., Austin, TX, for plaintiffs.

Donald D. Barry, Anthony S. Barry, Barry & Barry, Topeka, KS, J. Eugene Balloun, Timothy M. O'Brien, Robert D. Grossman, David A. Rameden, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for defendants.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on defendants' Motion to Dismiss Classic Communications as a Party and to Dismiss the Remaining Claims Against Rural and/or to Require a More Definite Statement (Doc. 42).[1] For the

---

1. "Defendants" or "Rural" refers collectively to the following parties: Defendant Rural Telephone Service, Inc. ("Rural Telephone"), Vision Plus, Inc. ("Vision Plus"), Larry E. Sevier, Mer-

reasons set forth below, defendants' Motion is denied in part and granted in part.

## BACKGROUND

The following facts are uncontroverted or, where controverted, construed in a manner most favorable to the plaintiff as the non-moving party.

In 1992, Classic Communications, Inc. ("Classic Communications") initiated efforts to expand its telecommunications business into western Kansas. Classic Communications' telephone subsidiary, Classic Telephone, Inc. ("Classic Telephone"), attempted to purchase telephone exchange systems in the cities of Bogue, Hill City, and Quinter (collectively the "Telephone Cities") and Classic Communications' cable television subsidiary, Classic Cable, Inc. ("Classic Cable"), attempted to expand its cable television service into the cities of Palco, Damar, Morland, Norcatur, and Gorham (collectively the "Cable Cities"). In each of the Cable Cities and Telephone Cities, Rural Telephone Service Co., Inc. ("Rural Telephone"), or its wholly-owned subsidiary, Vision Plus, Inc. ("Vision"), was already operating a local telephone exchange or a cable television system, or both.

In order to operate a local telephone exchange in Kansas, a business must obtain a franchise from the city to be serviced for use of the streets and rights-of-way. Classic Telephone applied for a nonexclusive, competitive franchise in the cities of Bogue and Hill City, and both cities denied Classic Telephone's application without, according to plaintiffs, providing any valid reason. Classic Telephone was not required to obtain a franchise in the city of Quinter because it obtained an existing franchise from United Telephone Company of Kansas ("United"). However, Quinter notified Classic Telephone that United's franchise would not be renewed when it expired and that Quinter did not intend to issue a franchise to Classic Telephone.

Classic Telephone subsequently informed the Telephone Cities that, under the Tele-communications Act of 1996, they were not permitted to deny a telephone franchise for competitive reasons and Classic Telephone requested additional information in an effort to find a "legitimate explanation" for the denial. According to plaintiffs, none of the Telephone Cities responded with a legitimate explanation and all continue to refuse to grant franchises to Classic Telephone.

Classic Cable also needed franchises in order to use the streets and rights-of-way of the cities to be serviced. Classic Cable applied for a competitive cable television franchise in each of the Cable Cities, and each city denied Classic Cable's application without, according to plaintiffs, providing any valid reason.

Classic Cable subsequently notified the Cable Cities that, under 47 U.S.C. § 541 of the 1992 Cable Act, they were not permitted to deny a cable franchise for competitive reasons and Classic Cable requested additional information in an effort to find a "legitimate explanation" for the denial. According to plaintiffs, none of the Cable Cities responded with a legitimate explanation and all continue to refuse to grant franchises to Classic Cable.

Classic alleges that Rural has engaged in illegal conduct and schemes designed to prevent Classic from competing with Rural. Specifically, Classic alleges that Rural has interfered with Classic's business relationships, made misrepresentations in order to injure Classic's business reputation, and conspired with members of the local city governments to prevent Classic from entering into and competing in the region's telecommunications market. Classic also alleges that Rural has used every available government process to obstruct Classic's entry into the telecommunications marketplace until Rural succeeded in altering the marketplace to its advantage.

## RULE 12(B)(6) MOTION TO DISMISS STANDARD

The court may not dismiss a cause of action for failure to state a claim under Rule

---

lin Dennis, Barney Hickert, F.C. Brungardt, Douglas Ziegler, Charley Minium, Marion Otter, Glenn Lambert, Robert E. McCall, and Shane

Brady ("Rural officers, directors and employees").

12(b)(6) unless it appears beyond doubt that the claimant can prove no set of facts supporting its claim which would entitle it to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989). In considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the nonmovant. *Housing Auth. of the Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir.1991); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support its claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

A motion to dismiss is appropriate where allegations "clearly indicate the existence of an affirmative defense." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990). In such cases, "the complaint is said to have a built-in defense and is essentially self-defeating." *Id.* Privilege and immunity are examples of built-in affirmative defenses that are properly considered on a motion to dismiss. *Id.*

Additionally, 12(b)(6) motions may be grounded on an objection to a plaintiff's status as a real party in interest. 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, § 1554, at 406–07 (2d ed. 1990). "A real party in interest defense can be raised as a Rule 12(b)(6) motion, stating, in effect, that because the plaintiff is not the person who should be bringing the suit, the plaintiff has 'failed to state a claim upon which relief can be granted.'" *Whelan v. Abell,* 953 F.2d 663, 672 (D.C.Cir.1992). *See also Schrag v. Dinges,* 825 F.Supp. 954 (D.Kan.1993) (granting summary judgment where plaintiff was not real party in interest).

## DISCUSSION

### I. Classic Communications Not A Proper Party

Rural first contends that Classic Communications is an improper party be-cause it is not a real party in interest and because it lacks antitrust standing to sue. Fed.R.Civ.P. 17(a) contemplates dismissal of a plaintiff who is not a real party in interest: "every action shall be prosecuted in the name of the real party in interest". The real party in interest for a cause of action is the party that "has a substantive right that is enforceable under the applicable law." *King Grain Co. v. Caldwell Mfg. Co.,* 820 F.Supp. 569, 571 (D.Kan.1993). Antitrust standing to sue is also in issue here. The Tenth Circuit has described standing in terms of a two-part test that considers whether there was an antitrust injury and whether the antitrust injury resulted directly from the antitrust violation. *Sharp v. United Airlines,* 967 F.2d 404, 406–07 (10th Cir.1992).

Rural points out that Classic Communications, as a parent corporation, is merely the owner and shareholder of its subsidiaries, Classic Telephone and Classic Cable. As a mere shareholder, Rural argues, Classic Communications is not the real party in interest and lacks standing to sue when one of its subsidiary corporations is injured. Therefore, Rural concludes, since Classic has not identified any substantive right that it owns in its individual capacity that has been adversely affected by Rural, Classic Communications is not a real party in interest and also lacks standing to sue.

Rural is correct in that injury arising solely out of harm done to a subsidiary corporation is generally insufficient to confer standing or status as real party in interest on a parent corporation. *K–B Trucking Co. v. Riss Int'l Corp.,* 763 F.2d 1148, 1154 (10th Cir.1985); *RTC v. Fleischer,* 848 F.Supp. 917, 923 (D.Kan.1994). Moreover, Classic's amended complaint is somewhat vague concerning the causal connection between Classic Communications' injury and the Rural defendants' challenged conduct. Nevertheless, in drawing all reasonable inferences in favor of plaintiffs, the court cannot say beyond doubt that Classic Communications has no substantive right enforceable under the applicable law. Nor can the court say beyond doubt that plaintiffs can prove no set of facts connecting Classic Communications' alleged harm to Rural's challenged conduct.

There is insufficient factual development at this early stage of litigation to properly dismiss Classic Communications.

■ Rural contends, in the alternative, that if Classic Communications was an acting party, it was transacting business in Kansas illegally because it is not registered to do business in Kansas. According to Rural, the fact that Classic Communications is not registered to conduct business in Kansas is fatal to its claims. The gist of this argument appears to be that Classic Communications cannot claim injury, and hence lacks standing and status as a real party in interest, because it never was authorized to conduct any sort of business in Kansas to begin with. The court disagrees. There is no reason why Classic could not first seek the required franchises before registering to do business. Nor is there any reason to believe that Classic would have been unable to obtain the right to conduct business in Kansas. Without some reasonable basis to show that Classic Communications was unable or unwilling to conduct its cable and telephone businesses should it have been granted a franchise, Classic Communications' allegation that Rural was the cause of its lost business suffices, at this juncture, to establish standing to sue and status as real party in interest.

Rural's motion to dismiss Classic Communications as a party is denied.[2]

## II. Individual Defendants Not Proper Parties

■ Rural also initially contends that Messrs. Hickert, Brungardt, Ziegler, Minium, Otter, Lambert, McCall and Brady should be dismissed because, as directors of Rural, they are not liable in their individual capacities. Rural does not dispute, however, that a director can be individually liable for antitrust violations. Rural contends only that Classic failed to plead that any of the above-named individuals have committed any act or otherwise participated in the complained of activities.

2. For the remainder of this order, "plaintiffs" or "Classic" refers collectively to Classic Communi-

In response, Classic states that "although the extent of the directors' participation in Rural's misconduct is not fully known, Rural's business is obviously conducted through its officers and directors." The question is whether this allegation suffices to state a claim against Rural's directors for participating in one or more acts which constitute steps in the progress of a conspiracy to violate antitrust laws. *See Hartford–Empire Co. v. United States*, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322 (1945). Keeping in mind that all reasonable inferences must be drawn in favor of Classic as the nonmovant, the court cannot determine that it appears beyond doubt that Classic can prove no set of facts supporting its claim which would entitle it to relief. Defendants' motion to dismiss Messrs. Hickert, Brungardt, Zeigler, Minium, Otter, Lambert, McCall and Brady is denied.

## III. Sherman Antitrust Claim

■ The Rural defendants assert immunity to Classic's Sherman antitrust claim under the *Noerr–Pennington* doctrine. *See United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Under this doctrine, "those who petition government for redress are generally immune from antitrust liability." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 56, 113 S.Ct. 1920, 1925, 123 L.Ed.2d 611 (1993). *See Oberndorf v. City & County of Denver*, 900 F.2d 1434, 1440 (10th Cir.), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). However, *Noerr–Pennington* immunity does not apply if the purported effort to influence or obtain government action is in fact only an attempt to interfere with the business relationships of a competitor. *Noerr*, 365 U.S. at 144, 81 S.Ct. at 533; *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511, 92 S.Ct. 609, 612, 30 L.Ed.2d 642 (1972). This is the so-called "sham" exception to the *Noerr–Pennington* doctrine.

cations, Classic Telephone, and Classic Cable.

 *Professional* is the most recent in a series of decisions clarifying the scope of the sham exception. 508 U.S. at 49, 113 S.Ct. at 1920. In that case, the Supreme Court articulated a two-part definition of sham petitioning. Under the first part of the definition, a defendant's activity must be "objectively baseless in the sense that no reasonable [petitioner] could realistically expect success on the merits." *Id.* at 60, 113 S.Ct. at 1928. Under the second part, the defendant's activity must be subjectively intended " 'to interfere directly with the business relationships of a competitor,' " *Id.* at 60–61, 113 S.Ct. at 1928, quoting *Noerr,* 365 U.S. at 144, 81 S.Ct. at 533 (1961) (emphasis added in *Professional* ), through the " 'use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon.' " *Professional,* 508 U.S. at 60–61, 113 S.Ct. at 1928 quoting *City of Columbia v. Omni Outdoor Advertising,* 499 U.S. 365, 380, 111 S.Ct. 1344, 1354, 113 L.Ed.2d 382 (emphasis in original). A court may not proceed to the second step and examine the subjective motivation of the petitioner unless it first finds the challenged conduct is "objectively meritless." *Professional,* 508 U.S. at 60, 113 S.Ct. at 1928.

 Significantly, *Professional* does not appear to affect the Tenth Circuit's decisions regarding the sham exception. In *Bright v. Moss Ambulance Service, Inc.,* the Tenth Circuit recognized the application of the sham exception to conduct which has "corrupted governmental processes to such an extent that it constitutes access-barring conduct." 824 F.2d 819, 823 (10th Cir.1987) (citing *Razorback Ready Mix Concrete Co. v. Weaver,* 761 F.2d 484, 487 (8th Cir.1985)). The Tenth Circuit has also recognized the application of the sham exception where legitimate lobbying efforts are accompanied by illegal or fraudulent actions. *Oberndorf v. City and County of Denver,* 900 F.2d 1434, 1441 (10th Cir.1990). Such illegal or fraudulent conduct might include perjury, fraud, bribery of governmental decision-makers, or abuse of process. *See Oberndorf,* 900 F.2d at 1441; *Razorback,* 761 F.2d at 487.

In light of *Professional, Bright,* and *Oberndorf,* Classic's first amended complaint is not sufficient to state an antitrust claim under the sham exception for several reasons. First, it contains no allegations that Rural's petitioning activities were objectively baseless, as required by the first prong of the two-part test in *Professional.* Classic's assertion that Rural's purpose in petitioning the cities was solely to "confuse and delay" is unhelpful because it only goes to the question of Rural's subjective motivation for its activities. *Professional* makes it clear that unless Classic has alleged that Rural's petitioning activity is objectively baseless, the court should not even reach the issue of Rural's subjective motivation behind its petitioning activities.

 Classic's first amended complaint is also deficient in that it fails to contain allegations that Rural's lobbying efforts were accompanied by illegal or fraudulent conduct. Although Classic does allege that private meetings were conducted between Rural and the cities, such allegations are not sufficient to satisfy the narrow sham exception in the Tenth Circuit. *See Bright,* 824 F.2d at 823 (holding that unilateral lobbying efforts by defendants did not invalidate the governmental decision-making process). *See also Oberndorf,* 900 F.2d at 1440 (holding that *ex parte* deliberations, alleged secret meetings, and covert agreements between decision makers and advocates of a particular view remain protected by *Noerr–Pennington*— though fraud, bribery and like conduct are not protected).

 Finally, the court finds no merit to Classic's allegations concerning Rural's petitioning of the Kansas Corporation Commission ("KCC"). Allegations that some petitioning activities are a sham do not defeat *Noerr–Pennington* protection for other petitioning activities. Here, Classic's antitrust claim rests on allegations of an antitrust conspiracy between Rural and the cities, not between Rural and the KCC. Accordingly, allegations that Rural's conduct in petitioning the KCC is a sham do not defeat *Noerr–Pennington* protection for Rural's efforts in lobbying the cities.

Defendants' motion to dismiss Count Two of plaintiff's amended complaint is granted.

## IV. Kansas Antitrust Claim

The Rural defendants contend that dismissal of plaintiffs' Sherman Act claim under Fed.R.Civ.P. 12(b)(6) requires similar treatment of Classic's Kansas antitrust claim. According to defendants, either the *Parker* state action doctrine or the *Noerr–Pennington* doctrine, or both, should apply to immunize defendants from Classic's state antitrust claim.

■■■■ The court disagrees that *Parker* state action immunity, first announced in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), applies to state antitrust claims. The purpose of the *Parker* state action doctrine is to immunize state action from federal antitrust scrutiny. *Hallie v. City of Eau Claire*, 471 U.S. 34, 44 n. 7, 105 S.Ct. 1713, 1719 n. 7, 85 L.Ed.2d 24 (1985). *Parker* immunity is not applicable to state action because "the Sherman Act was not intended to prohibit States from imposing restraints on competition." *Southern Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 55, 105 S.Ct. 1721, 1725, 85 L.Ed.2d 36 (1985). Where, as here, federal antitrust laws are not implicated, the purpose behind state action immunity disappears. Even the underlying policy of state action immunity is inapplicable to the relationship between a state and a state supervised actor. The *Parker* immunity doctrine was founded on policies of federalism and comity in the realm of trade regulation as a means to protect the delicate relationship between the federal and state governments, both of which are sovereign. *Parker*, 317 U.S. at 341, 63 S.Ct. at 307. In contrast, the same concerns about sovereignty do not arise between a state and a state-supervised private organization acting pursuant to state law.

■■■■ The *Noerr–Pennington* doctrine, on the other hand, is of a different pedigree. *Noerr–Pennington* immunity is, at least in part, grounded in the First Amendment. The Supreme Court recognized the First Amendment underpinnings of the doctrine in *California Motor Transport*, in which the Court concluded:

[I]t would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors.

404 U.S. at 510–11, 92 S.Ct. at 611. Given this First Amendment justification, it follows that *Noerr–Pennington* should also immunize conduct under state antitrust statutes. *See, e.g., Computer Assoc. Int'l v. American Fundware, Inc.* 831 F.Supp. 1516, 1523 (D.Colo.1993) (Applying the doctrine to state unfair competition claims, the court noted that "*Noerr–Pennington* immunity is a constitutional, not an antitrust, doctrine."). However, as discussed with regard to Classic's Sherman antitrust claim, Classic has not satisfied the requirements for stating an antitrust claim under the sham exception to the *Noerr–Pennington* doctrine. Accordingly, Rural's conduct is immunized by the *Noerr–Pennington* doctrine from Classic's state antitrust claim and Rural's motion to dismiss Count Three is granted.

## V. Lanham Act Claim

■■■■ Classic brings a claim under the Lanham Act, 15 U.S.C. § 1125(a), which provides in pertinent part that:

(a) Civil action. (1) Any person who, on or in connection with any goods or services, uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which—....
(B) in commercial *advertising or promotion*, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a) (emphasis added).

Rural argues that Classic has failed to state a claim upon which relief can be granted because Rural's activities in the city of Logan are not sufficient to meet the "commercial advertising or promotion" requirement of 15 U.S.C. § 1125(a)(1)(B). Rural contends that

in order to state a claim under 15 U.S.C. § 1125(a)(1)(B), Classic must show that the alleged misrepresentations were sufficiently disseminated to constitute advertising or promotion, and that its door-to-door solicitations do not meet this requirement. Classic, on the other hand, contends that Rural's telephonic or door-to-door campaign, during which Rural allegedly disseminated false information about Classic's financial viability, satisfies the "commercial advertising or promotion" requirement of the Lanham Act.

▇▇▇ Whether dissemination is sufficient to constitute "advertising and promotion" will vary from case to case. *Garland Company v. Ecology Roof Systems Corp.*, 895 F.Supp. 274, 277 (D.Kan.1995) (citing *Medical Graphics Corp. v. SensorMedics Corp.*, 872 F.Supp. 643 (D.Minn.1994)); *American Needle and Novelty Inc. v. Drew Pearson Marketing, Inc.*, 820 F.Supp. 1072, 1077–78 (N.D.Ill. 1993). Here, Classic alleges that Rural "began systematically contacting each of Classic's cable customers in Logan and made misrepresentations about Classic Cable...." Rural suggests this allegation is deficient because it "fails to allege or suggest that all or most customers were told this allegedly false information."

The court does not agree that all, or even most, of Classic's cable customers need to have been misinformed. Instead, Classic need only allege something more than a few isolated misrepresentations to trigger Lanham Act protection. At this stage of the proceedings, all reasonable inferences must be drawn in favor of Classic as the plaintiff. Accordingly, the court finds Classic's first amended complaint sufficient to state a claim and Rural's motion to dismiss Count Five is denied.

## VI. Defamation Claim

▇▇▇ Classic's first amended complaint contains numerous allegations of false, misleading or disparaging statements. However, Rural contends that only paragraph 51 of Classic's amended complaint is sufficient to satisfy the pleading requirements of Fed. R.Civ.P. 8(a). The court agrees. The general rule of liberally construing a complaint when considering 12(b)(6) motions is inappli-cable to certain traditionally disfavored causes of action, including defamation. 5A Charles A. Wright & Arthur R. Miller, § 1357 (2d ed. 1990). In such instances, "courts tend to construe the complaint by a somewhat stricter standard." *Id.* at 359. In order to effectively plead a defamation claim under Kansas law, a plaintiff must set forth the alleged defamatory words published, the names of those persons to whom they were published and the time and place of their publication. *White v. General Motors Corporation, Inc.*, 908 F.2d 675, 681 (10th Cir.1990) citing *Schulze v. Coykendall*, 218 Kan. 653, 545 P.2d 392, 394 (1976) (overruled on other grounds). Only paragraph 51 of Classic's first amended complaint meets these criteria.

▇▇▇ Paragraph 51 contains allegations that: (1) Rural's assistant manager, Roger Vonfeldt, stated to the Damar city council Classic Cable provides lousy cable service; and (2) Rural's marketing manager, Douglas Huscher, stated to the Norcatur city council that "all of the communities in Northwestern Kansas are dissatisfied with the cable television service provided by Classic" and that "Classic is just not a reputable company." Although Rural concedes these alleged statements are sufficient to meet the pleading requirements of Fed.R.Civ.P. 8(a), Rural asserts that they are merely statements of pure opinion, or "rhetorical hyperbole," and, as such, are not actionable.

In *Milkovich v. Lorain Journal Co.*, the Supreme Court declined to create an artificial dichotomy between "opinion" and fact. 497 U.S. 1, 20, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990). The *Milkovich* Court instead noted that statements of opinion have First Amendment protection only to the extent they have no provably false factual connotation. *Id.* In other words, "the question under this standard is whether the person has made an assertion that can reasonably be understood as implying provable facts." *Woodmont Corp. v. Rockwood Center Partnership*, 811 F.Supp. 1478, 1482 (1993). This court finds that, at a minimum, Mr. Huscher's alleged statement concerning the dissatisfaction of Classic's cable customers could be reasonably understood as implying provable facts and is sufficiently factual to be suscepti-

ble of being proved true or false. Accordingly, Rural's motion to dismiss Count Six is denied.

## VII. Tortious Interference Claims

■ Classic claims that Rural tortiously interfered with Classic's contract with United for the purchase of United's telephone exchange assets. Rural contends that plaintiff's first amended complaint fails to allege facts to support all essential elements of a claim for tortious interference with contract. The court agrees with Rural.

■ Kansas law recognizes that one who, without justification, induces or causes the breach of a contract to which it is not a party will be answerable for damages caused thereby. *See Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106 (1986). Under Kansas law, the elements essential to recovery for tortious interference with contract are: (1) the existence of a contract between the plaintiff and a third party; (2) the wrongdoer's knowledge thereof; (3) his or her intentional procurement of its breach; (4) the absence of justification; and (5) resulting damage to the plaintiff. *Brown Mackie College v. Graham*, 768 F.Supp. 1457, 1460 (D.Kan.1991), *aff'd*, 981 F.2d 1149 (10th Cir.1992); *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 872 P.2d 252 (1994).

■ Classic alleges that Rural's conduct adversely affected its ability to perform its contract with United. However, an action for tortious interference with contract does not extend to claims of adverse impact or increased burden which fall short of inducing or causing actual breach. *Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F.Supp. 1154 (D.Kan.1990). *See Noller v. General Motors Corp.*, 244 Kan. 612, 772 P.2d 271 (1989). Without some allegation that Rural intentionally induced United to breach its contract with Classic, the amended complaint fails to meet the essential elements of a claim for tortious interference with contract. Rural's motion to dismiss Classic Telephone's tortious interference with contract claim is granted.

■ Classic also claims that Rural tortiously interfered with Classic's prospective business relationships with the Rural Telephone Finance Company ("RTFC") and CoBank. In Kansas, a claim for tortious interference with prospective business relationships requires:

(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.

*Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 977 (10th Cir.1990) (applying Kansas law and quoting *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106, 1115 (1986)). Rural does not dispute that Classic's allegations satisfy these requirements. Rural instead claims immunity under the so-called "competitors" privilege. In response, Classic argues that this competitor's privilege is not applicable here because "neither [its] relationship with the RTFC or CoBank relates to a 'third person' for whom Rural is vying to obtain business to the exclusion of Classic." The court disagrees.

■ Kansas recognizes that "not all interference in present or future contractual relations is tortious. A person may be privileged or justified to interfere with contractual relations in certain situations." *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106, 1115 (1986); *see also Noller v. GMC Truck & Coach Div.*, 13 Kan.App.2d 13, 760 P.2d 688, 699 (1988), *rev'd on other grounds*, 244 Kan. 612, 772 P.2d 271 (1989). The Tenth Circuit has held that the Kansas Supreme Court would adopt the business competitor privilege set forth in the *Restatement (Second) of Torts* § 768 as a defense to the tort of interference with prospective business contracts. *DP–Tek, Inc. v. AT & T Global Information Solutions Co.*, 100 F.3d 828 (10th Cir.1996). Section 768 provides in part:

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his

competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if (a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other.

In considering the four factors specified in § 768(1), it appears there is no dispute that factors (a) and (d) are applicable under the facts of this case. Classic and Rural were in direct competition for telecommunications business in western Kansas, and Classic has made no allegations which would raise a question as to whether Rural's purpose was at least in part to advance its interests in competing with Classic. Factor (c) is also applicable because Classic's state and federal antitrust claims against Rural are dismissed as legally insufficient. Accordingly, the question of whether Rural's actions were privileged business competition as described in *Restatement (Second) of Torts* § 768 turns on whether the first amended complaint contains allegations that Rural employed "wrongful means" in its efforts to affect Classic's business relationships with the RTFC and CoBank.

▮▮▮In the context of interference with a prospective contract, the Tenth Circuit has stated that " 'wrongful means' refers to conduct such as 'physical violence, fraud, civil suits, and criminal prosecutions.' " *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 623 (10th Cir.1995) (interpreting Colorado law and citing *Restatement (Second) of Torts* § 768 cmt. e). Moreover, in *DP–Tek*, the Tenth Circuit concluded that the Kansas Supreme Court would interpret wrongful means to require independently actionable conduct. 100 F.3d at 835. It follows, then, that competitive conduct which is not independently actionable does not become actionable because it interferes with another's prospective contractual relations.

Classic alleges that Rural intentionally interfered with Classic's prospective business relationships with the RTFC and CoBank.

In particular, Classic alleges that Rural "did knowingly and intentionally make false and misleading statements" which "interfered" with Classic's business relationships with the RTFC and CoBank. Classic also alleges that a member of Rural's board of directors "intervened" with the RTFC personnel negotiating with Classic and thus preventing Classic from obtaining financing. Finally, Classic alleges that Rural's general manager "interfered" with Classic's attempt to obtain financing from CoBank.

Clearly, the allegations that Rural "intervened" and "interfered" with Classic's attempts to obtain financing are neither illegal nor independently actionable. Moreover, as discussed above, to effectively plead a defamation claim, a plaintiff must set forth the alleged defamatory words published, the names of those persons to whom they were published and the time and place of their publication. *White*, 908 F.2d at 681. Classic's allegation that rural made "false and misleading" statements is therefore not sufficient to state a claim for defamation and is also not independently actionable. The court concludes that none of the alleged actions undertaken by Rural to affect Classic's business relationships with the RTFC and CoBank constitute "wrongful means" sufficient to overcome Rural's competitive privilege and form the basis for a tortious interference claim. Accordingly, Rural's motion to dismiss Classic's claim for tortious interference with prospective business relationships is granted.

## VIII. Attorney's Fees

▮▮▮Rural suggests that Count Eight, Classic's claim for attorney's fees, is merely a prayer for relief and should be dismissed for failure to state a claim. The court agrees that Count Eight fails to state an independent claim for relief and to that extent is dismissed. However, this should not be understood to preclude Classic from seeking attorney's fees should Classic ultimately prevail on any of the underlying claims for which attorney's fees are recoverable.

## IX. More Definite Statement

▮▮▮Rural moves the court to require a more definite statement. Fed.R.Civ.P. 12(e)

contemplates that a court should grant a motion for a more definite statement where a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." However, such motions are generally not favored by the courts and are properly granted only when a party is unable to determine the issues he must respond to. *Resolution Trust Corporation v. Thomas,* 837 F.Supp. 354, 356 (D.Kan.1993). The court is not persuaded that a more definite statement is necessary in this case, and Rural's motion is denied.

**IT IS THEREFORE BY THE COURT ORDERED** that defendants' Motion to Dismiss Classic Communications as a Party and to Dismiss the Remaining Claims Against Rural and/or to Require a More Definite Statement (Doc. 42) is granted in part and denied in part. Rural's motion is granted as to the federal and state antitrust claims, the tortious interference with contract and tortious interference with prospective business relationship claims, and the claim for attorney's fees. Rural's motion is denied as to the Lanham Act claim and the defamation claim. Rural's motions to dismiss Classic Communications as a party and for a more definite statement are also denied.