**SPORTS UNLIMITED, INC., Plaintiff,**

v.

**LANKFORD ENTERPRISES, INC., Defendant.**

**No. Civ.A. 98–2201–GTV.**

United States District Court, D. Kansas.

April 21, 2000.

Bryan W. Smith, Fisher, Cavanaugh, Smith & Lemon, P.A., Topeka, KS, for Sports Unlimited Inc., plaintiff.

Steven R. Fabert, Larry G. Pepperdine, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Lankford Enterprises Inc., defendant.

J. Franklin Hummer, Davis, Unrein, Hummer, McCallister, Biggs & Head,

L.L.P., Topeka, KS, for Bob Thompson Construction, Inc., defendant.

Kevin O. Murphy, Marc C. Lapp Firm, Overland Park, KS, for Tri–State Floors, Inc., defendant.

## MEMORANDUM AND ORDER

VanBEBBER, District Judge.

Plaintiff Sports Unlimited, Inc. ("Sports Unlimited") brings this action against defendant Lankford Enterprises, Inc. ("Lankford") alleging unfair competition in violation of the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"), tortious interference with prospective business advantages, and tortious interference with contract. Diversity jurisdiction is alleged for the tort claims. The case is before the court on defendant's Motion for Summary Judgment (Doc. 60). For the reasons set forth below, defendant's motion is granted.

### I. Factual Background

The following facts are either uncontroverted or are taken from depositions, affidavits, and other documents from the discovery record that were submitted in summary judgment papers, and are viewed in a light most favorable to plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

Both plaintiff and defendant are corporations engaged in the business of supplying and installing wood flooring for the construction of gymnasiums. Although plaintiff had subcontracted with defendant for installation work in the 1970s and 1980s, at present they are competitors. Plaintiff alleges that, sometime in February 1996, defendant "drafted, modified, participated, and/or conspired in the distribution of a 'reference list'" that contains false and inaccurate information about plaintiff. The document consists of a list of plaintiff's previous or current clients; after each client's name, there appears an apparent paraphrase of the client's negative comments about plaintiff. The actual author of the document is not known, but

plaintiff alleges that defendant "would be the most probable source for some of the information contained in the 'reference list.'" By August 1996, several firms with whom plaintiff either did business or expected to do business had received the reference list. Two entities that received the list awarded plaintiff a contract or subcontract after receiving a copy.

Plaintiff also alleges that, on February 15, 1996, defendant's president, Marie Franklin, telephoned Tri–State Floors, Inc. ("Tri–State Floors") either to pass along negative information about plaintiff or to solicit such information. (Tri–State Floors, a competitor of both plaintiff and defendant, was named as a defendant in this case but has been dismissed by joint stipulation (Doc. 59)).

In early 1996, plaintiff contracted with Coonrod & Associates ("Coonrod") to supply wood flooring for a gymnasium at Ft. Larned Middle School in Larned, Kansas ("the Larned project"). By July 1996, several problems began to occur with the flooring, and the project's architect, Gary Karst, telephoned Franklin for advice. Franklin advised Karst and Coonrod by telephone and by a letter dated August 2, 1996 that they might be able to remedy the problem by adjusting the humidity in the gymnasium. Franklin cautioned that "the fastest and surest [solution] would be to completely remove the floor and start over" and recommended that the contractor secure an extended warranty. Franklin also supplied Karst and Coonrod with the reference list.

Plaintiff's contract was terminated by Coonrod on August 6, 1996. Defendant was subsequently awarded a contract to remove and re-install the flooring.

Plaintiff's executives Darrell Nelson and Paul Arterbery testified in deposition that, at some point subsequent to these events, plaintiff was turned down for a project in Fort Scott, Kansas, for which it was the lowest bidder. Nelson testified that plaintiff was not awarded the contract because

"the architect had gotten some bad references." Defendant was the second-lowest bidder, and was awarded the contract.

The Larned project and its problems were the subject of an action brought in July 1998 by Coonrod against Sports Unlimited and others in the District Court of Pawnee County, Kansas (Case no. 98–C–37). As to Sports Unlimited, Coonrod alleged breach of contract and negligence. In April 1999, pursuant to a joint motion in which several parties announced that a settlement had been reached, Sports Unlimited and several other defendants were dismissed with prejudice.

Plaintiff filed its complaint in this case on April 29, 1998.

## II. Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. *See id.* Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *See id.* at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* The court must consider the record in the light most favorable to the nonmoving party. *See Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

## III. Analysis

### 1. Statute of Limitations; Tortious Interference Claims

Defendant argues that plaintiff's tortious interference claims amount to a defamation action masquerading as a tortious interference action which should be dismissed for untimeliness. A defamation cause of action must be brought within one year of its accrual. *See* Kan.Stat.Ann. § 60–514(a). Actions for tortious interference with contract or with business expectancy, however, may be brought within two years. *See* Kan.Stat.Ann. § 60–513(a)(4). Plaintiff filed its complaint in this case more than one year, but less than two years, after its action began to accrue.

Defendant, citing *Taylor v. International Union of Electronic, Elec., Salaried, Mach. and Furniture Workers, AFL–CIO (IUE),* 25 Kan.App.2d 671, 968 P.2d 685 (1998), argues that plaintiff is attempting to circumvent the one-year time bar "by disguising an action for defamation and calling it one for tortious interference." 968 P.2d at 690. In *Taylor,* the Kansas Court of Appeals noted that

[i]n the final analysis, the success of plaintiff's lawsuit rests on whether the statements in the letter are true or false. If they are true, plaintiff has little to

complain about. If they are false, plaintiff has a cause of action against defendant, but the question is whether it is a cause of action for tortious interference or it is one for defamation. *Id.* The court discussed a similar Pennsylvania case, in which the court held that "when in essence [the claim] is one of defamation ... we will look to the gravamen of the action, not to the label applied to it by plaintiffs." *Evans v. Philadelphia Newspapers, Inc.,* 411 Pa.Super. 244, 601 A.2d 330, 333 (1991) (quoted in *Taylor,* 968 P.2d at 691). The court in *Taylor* concluded that, because the tortious interference action was "clearly and solely based on [an] alleged defamatory statement," it would not permit plaintiff "to escape the bar of the statute of limitations" for defamation. 968 P.2d at 692.

To establish a claim of defamation, "plaintiff must show: (1) false and defamatory words; (2) communicated to a third person; and (3) causing harm to the reputation of [plaintiff]," subject to certain defenses such as truth and privilege. *Gearhart v. Sears, Roebuck & Co., Inc.,* 27 F.Supp.2d 1263, 1277 (D.Kan.1998), *aff'd,* 194 F.3d 1320, (10th Cir.1999). To establish a claim of tortious interference with prospective business advantage or tortious interference with contract, plaintiff must show:

(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct. [Both torts] are predicated on malicious conduct.

*Turner v. Halliburton Co.,* 240 Kan. 1, 722 P.2d 1106, 1115 (1986). With respect to its claim for tortious interference with prospective business advantage, plaintiff must further show that defendant interfered improperly with plaintiff's business expectancy through independently actionable conduct. *See DP–Tek, Inc., v. AT & T Global Information Solutions Co.,* 100 F.3d 828, (10th Cir.1996) (deciding that under Kansas law, where parties are in competition, a plaintiff claiming tortious interference with prospective contract must show that defendant engaged in independently actionable conduct).

In this action, plaintiff's claim is "clearly and solely based" on defamatory statements made or disseminated by defendant. *Taylor,* 968 P.2d at 692. The focus of the suit is defendant's role in the creation or distribution of the reference list; the only other inappropriate conduct alleged by plaintiff consists of defendant's phone call to Tri–State Floors and the August 2, 1996 letter written as a consultant. Plaintiff has alleged no conduct whatsoever by defendant that does not depend for its relevance on "whether the statements ... are true or false." *Id.* at 690. The court concludes that the "gravamen" of this action is the defamatory nature of defendant's communication, and that plaintiff's claim for tortious interference constitutes a defamation claim "dressed up in a different fashion." *Id.* at 691 (quoting the trial court). The claim is therefore barred by the statute of limitations for defamation actions. *See* Kan. Stat.Ann. § 60–514(a). The court grants defendant's motion for summary judgment with respect to plaintiff's tortious interference claims.

### 2. Unfair Competition

Plaintiff claims that defendant engaged in unfair competition when it allegedly disseminated the reference list. The Lanham Act prohibits persons from making "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... (B) in commercial advertising or promotion, misrepresents the nature, charac-

teristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities...." 15 U.S.C.˙§ 1125(a)(1). Defendant responds that plaintiff's claim should be dismissed because defendant's alleged dissemination of the reference list does not constitute "commercial advertising or promotion." The court agrees.

■ Several federal courts have utilized the following four-step analysis in evaluating whether conduct constitutes commercial advertising or promotion, and the court agrees that the test is appropriate:

(1) the representations must be commercial speech;

(2) they must be made by a defendant who is in commercial competition with the plaintiff;

(3) they must be made for the purpose of influencing consumers to buy defendant's goods or services; and

(4) they must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Garland Co. Inc. v. Ecology Roof Sys. Corp.*, 895 F.Supp. 274, 277 (D.Kan.1995) (citing *Gordon and Breach Science Publishers S.A. v. American Institute of Physics*, 859 F.Supp. 1521 (S.D.N.Y.1994)); *see also Medical Graphics Corp. v. SensorMedics Corp.*, 872 F.Supp. 643, 650 (D.Minn.1994). The court finds that a genuine issue of material fact exists as to the first three elements.

As to the fourth element, defendant argues for the result reached in the *Garland* case, in which the court held that "a single letter written by defendant's president which was delivered to one contractor" did not constitute commercial advertising or promotion. 895 F.Supp. at 275. Plaintiff argues instead for the result reached in *Classic Communications, Inc. v. Rural Tel. Serv. Co., Inc.*, 956 F.Supp. 910, 920 (D.Kan.1997), in which the court held that door-to-door solicitations constituted commercial advertising or promotion because

plaintiff needed only to allege "something more than a few isolated misrepresentations" in order to trigger Lanham Act protection. *Id.* Neither case is perfectly apposite. Unlike the defendant in *Garland*, defendant Lankford allegedly distributed the reference list to at least two, and possibly as many as seven, recipients. Similarly, the court rejects plaintiff's comparison between defendant's alleged conduct and the door-to-door solicitation alleged in *Classic Communications*.

■ Were the "relevant purchasing public" for gymnasium flooring exceedingly small, perhaps defendant's actions could constitute commercial advertising or promotion. Nelson testified in deposition, however, that plaintiff makes at least 150 bids per year, more than he can even remember. Given the scale of plaintiff's operation and what it says about the size of the market for gymnasium flooring, the court is hard-pressed to see how defendant's alleged actions could credibly be called "advertising" or "promotion." In fact, the court concludes that, in this context, defendant's alleged dissemination to this limited group is nothing more than "a few isolated misrepresentations." *Classic Communications*, 956 F.Supp. at 920. The court grants defendant's motion for summary judgment with respect to plaintiff's unfair competition claim.

### 3. Claims Related to Litigation in State Court

Defendant argues that plaintiff cannot seek recovery for damages resulting from the state court action brought by Coonrod. Apparently, defendant's concerns stem from language in Section 4 of the Pretrial Order (Doc. 76) in which the court documents plaintiff's contentions that it "incurred costs associated with defense in the Fort Larned litigation" and that defendant is liable for various forms of "negligent interference."

Plaintiff responds that it seeks neither indemnity nor contribution from plaintiff,

and that it has not asserted a negligence claim. To the extent that plaintiff asserts claims for negligence, indemnity, or contribution, the court grants defendant's motion for summary judgment. Furthermore, plaintiff's claims for damages are rendered moot by the court's conclusions on plaintiff's unfair competition and tortious interference claims. The court grants defendant's motion for summary judgment with respect to plaintiff's damages claims.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's Motion for Summary Judgment (Doc. 60) is granted.

The case is closed.

**IT IS SO ORDERED.**