**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 3 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SPORTS UNLIMITED, INC.,

      Plaintiff - Appellant,

v.

LANKFORD ENTERPRISES, INC.,

      Defendant - Appellee.

No. 00-3160

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 98-2201-GTV)**

---

Submitted on the briefs:[*]

Bryan W. Smith and Todd D. Powell of Fisher, Cavanaugh, Smith & Lemon, P.A.,
Topeka, Kansas, for Plaintiff - Appellant.

Steven R. Fabert of Fisher, Patterson, Sayler & Smith, L.L.P., Topeka, Kansas, for
Defendant - Appellee.

---

Before **BRORBY, HOLLOWAY and JONES**,[**] Senior Circuit Judges.

---

    [*]After examining the briefs and appellate record, this panel has determined unanimously
that oral argument would not materially assist in the determination of this appeal. *See* Fed. R.
App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral
argument.

    [**]The Honorable Nathaniel R. Jones, Senior Circuit Judge of the Sixth Circuit, sitting by
designation.

**HOLLOWAY**, Senior Circuit Judge.

Plaintiff-Appellant Sports Unlimited, Inc. brought suit against Defendant-Appellee Lankford Enterprises, Inc., presenting several theories for relief, all based on allegations that Defendant had caused Plaintiff to lose business and had injured its business reputation.[1]  Jurisdiction in the district court was claimed under both 28 U.S.C. §§ 1331 & 1332; Plaintiff also invoked the court's supplemental jurisdiction under 28 U.S.C. § 1367 (which appears to have been important because the First Amended Complaint revealed on its face that Plaintiff and one of the defendants, who was later dismissed, see n.1, were both corporations deemed to be citizens of Oklahoma).

The district court granted summary judgment for Defendant and issued a Memorandum and Order, published at 93 F.Supp.2d 1164, explaining its analysis.  The district judge held that Plaintiff's two claims based on Kansas law – tortious interference with contract and tortious interference with prospective business advantage – were barred by the applicable Kansas statute of limitations.  The district judge also granted summary judgment against Plaintiff on its claim based on section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), concluding that Plaintiff had not proven sufficient dissemination of the

---

[1]Plaintiff's First Amended Complaint named two other defendants, but these parties were dismissed before judgment and are not parties to this appeal.

allegedly misleading information to constitute commercial "advertising or promotion" within the meaning of the Lanham Act.

This court has jurisdiction under 28 U.S.C. § 1291. We find no error in the analysis of the district court and affirm.


# I

Although each party submitted voluminous materials in support of its position on Defendant's motion for summary judgment, the district judge very succinctly summarized the truly salient facts, 93 F.Supp.2d at 1166-67, and on appeal Plaintiff devotes only two paragraphs of its brief to providing the factual context for its arguments. Consequently, we too may be quite brief in setting out the essential background. We pause to note that, as the district judge was considering Defendant's motion for summary judgment, he credited Plaintiff's allegations in some crucial respects, which will be mentioned as appropriate.

Both Plaintiff and Defendant are in the business of supplying and installing gymnasium floors. In February 1996, Defendant came into possession of a "reference list" containing allegedly false and defamatory information about Plaintiff. The reference list consists of a list of some of Plaintiff's customers, followed in some cases by what appears to be a description of the customers' unfavorable comments about Plaintiff's work. Plaintiff contends that Defendant "would be the most probable source

for some of the information." Although Defendant admitted distributing the reference list only to two persons, the architect and the general contractor on the Larned project mentioned below, Plaintiff alleged that Defendant distributed the list to all seven known recipients.

Plaintiff installed a floor in a gymnasium at a middle school in Larned, Kansas in early 1996. In the summer of that year, several problems with the floor developed. The architect, a Mr. Karst, telephoned Ms. Marie Franklin, president of Defendant, for advice on the floor problems. Ms. Franklin advised, both by telephone and by letter, that adjusting the humidity in the gymnasium might remedy the problem, but she said that the "fastest and surest" solution would be removal and replacement of the floor. She also sent a copy of the reference list to Mr. Karst and to Coonrod & Associates, the general contractor on the project. Later, Coonrod terminated Plaintiff's contract and hired Defendant to remove and replace the floor.

**II**

**A**

We review a district court's grant of a motion for summary judgment *de novo*, applying the same standard as the district court. *See Trujillo v. University of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1213 (10th Cir. 1998). Summary judgment is appropriate only if the admissible evidence shows "there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* The burden of showing that no genuine issue of material fact exists is borne by the moving party. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden by pointing to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.

Both the district court and the court of appeals will draw all reasonable inferences in favor of the nonmoving party. *See Curtis v. Oklahoma City Public Sch. Bd. of Ed.*, 147 F.3d 1200, 1214 (10th Cir. 1998). If no genuine issue of material fact is in dispute, this court then determines whether the substantive law was correctly applied by the district court. *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

**B**

The district court granted Defendant's motion for summary judgment and explained its reasoning in a thorough opinion reported at 93 F. Supp.2d 1164. The judge held that Plaintiff's state law claims – for tortious interference with contract and tortious interference with prospective business advantage – were barred by limitations. The judge

observed that ordinarily the two year statute of limitations of Kan. Stat. Ann. § 60-513(a)(4) would apply to these torts.[2]  In the circumstances of this case, however, the judge held that the claims should be treated as defamation claims, which are expressly subject to a one year period of limitations under Kan. Stat. Ann. § 60-514(a).

In deciding to apply the one year statute of limitations, the district judge relied on *Taylor v. I.U.E.*, 968 P.2d 685 (Kan. Ct. App. 1998), concluding that Plaintiff Sports Unlimited's claims, like those of the plaintiff in *Taylor*, were "clearly and solely based" on defamatory statements; that the gravamen of the claims thus was defamation; and that litigants should not be permitted to escape the bar of limitations "'by disguising an action for defamation and calling it one for tortious interference.'"  93 F. Supp.2d at 1167 (quoting *Taylor*, 968 P.2d at 690).

On appeal, Plaintiff does not dispute that the action was commenced more than one year after the Defendant had committed the allegedly tortious acts.  Instead Plaintiff raises a purely legal issue, arguing that the two year statute of limitations should have been applied rather than the one year statute.  We conclude that the district judge was correct in his determination that the federal court should follow *Taylor* as an authoritative indication of Kansas law on the limitations issue.

---

[2]That subsection is a catchall provision, providing a two year limitation period for "action[s] for injury to the rights of another, not arising on contract, and not herein enumerated."  Kan Stat. Ann. § 60-513(a)(4).

Plaintiff argues that *Taylor* is "wrong and inapplicable."[3]  As to the first of these contentions, we are persuaded that we must regard *Taylor* as authoritative even though it was decided by the intermediate appellate court of Kansas, not the highest court of the state.  As the Supreme Court has explained:

> A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them.  In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable. State law is to be applied in the federal as well as the state courts[,] and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of "general law" and however much the state rule may have departed from prior decisions of the federal courts.
>
> *Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.*

*West v. A.T.&T.*, 311 U.S. 223, 236-37 (1940) (emphasis added; internal citations omitted).

Our research has not revealed a truly definitive statement from the Kansas Supreme Court on the precedential weight of opinions of the Kansas Court of Appeals. We do find, however, a very strong indication in the state's rules for its appellate courts

---

[3]Appellant's Corrected Opening Brief at 35.

that *published* opinions of the intermediate court, like *Taylor*, are regarded as precedential.  Rule 7.04 of the applicable Kansas rules provides that decisions of the Kansas Court of Appeals are to be explained either in published, formal opinions or in unpublished "memorandum opinions."  The rule, which is quoted in full in the margin, further provides that *unpublished* opinions "are deemed to be without value as precedent . . . ."[4]  The clear

---

[4] Rule 7.04 provides:

Opinions of the appellate courts, whether signed or per curiam, shall be memorandum opinions or formal opinions according to the requirements of K.S.A. 60-2106.

Opinions shall be published in the official reports only when they satisfy the standards set out in this rule.  *Disposition by memorandum, without a formal published opinion, does not mean that the case is considered unimportant.  It does mean that no new points of law making the decision of value as precedent are believed to be involved.*

An opinion shall be prepared in memorandum form unless it:
(a) Establishes a new rule of law or alters or modifies an existing rule;
(b) Involves a legal issue of continuing public interest;
(c) Criticizes or explains existing law;
(d) Applies an established rule of law to a factual situation significantly different from that in published opinions of the courts of this state;
(e) Resolves an apparent conflict of authority; or
(f) Constitutes a significant and non-duplicative contribution to legal literature:
    (1) by an historical review of law; or
    (2) by describing legislative history.

A memorandum opinion shall not be published unless there is a separate concurring or dissenting opinion in the case, and the author of such separate opinion requests that it be reported; or unless it is ordered to be published by the Supreme Court.

A party or other interested person who believes that an opinion of

inference that we draw from this provision is that the *published* opinions of the Kansas

Court of Appeals, like *Taylor*, do have precedential value in Kansas.

Plaintiff argues rather cogently that the holding of *Taylor* undermines the vitality

of the tortious interference theories as separate torts.  Plaintiff asserts that disparaging

remarks are so frequently the primary tortious conduct in interference cases that virtually

---

either the Supreme Court or Court of Appeals which is not designated by the court for publication meets the standards for publication established by this rule *or otherwise has substantial precedential value* may file a motion in the Supreme Court asking that it be published.  The motion shall state the grounds for such belief, shall be accompanied by a copy of the opinion, and shall comply with Supreme Court Rule 5.01 except that service shall not be required.

Regardless of the foregoing, no opinion superseded by an opinion on rehearing shall be published.  An opinion that is modified on rehearing shall be published as modified if it otherwise meets the standards of this rule.

A formal opinion shall be written and published only if the majority of the justices or judges participating in the decision find that one of the standards set out in this rule is satisfied.  The court or panel which decides the case shall make a tentative decision whether or not a formal opinion is required before or at the time the writing assignment is made.  Concurring and dissenting opinions shall be published only if the majority opinion is published.

All memorandum opinions, unless otherwise required to be published, shall be marked: "Not Designated for Publication."  *Since unpublished opinions are deemed to be without value as precedent* and are not uniformly available to all parties, opinions so marked shall not be cited as precedent by any court or in any brief or other material presented to any court, except to support a claim of res judicata, collateral estoppel, or law of the case.

Rule 7.04, Rules of the Supreme Court of Kansas, Rules Relating To Supreme Court, Court of Appeals, and Appellate Practice (emphasis added).

all such actions will be subject under *Taylor* to a one year statute of limitations. This, Plaintiff says, is contrary to the will of the Kansas Supreme Court in recognizing tortious interference with contract and tortious interference with prospective business advantage as separate theories for relief and contrary to the will of the state legislature, which has provided that a two year statute of limitations should apply to the tortious interference claims.[5]

Plaintiff points to *Rinsley v. Brandt*, 446 F. Supp. 850 (D. Kan. 1977), *affirmed*, 700 F.2d 1304 (10th Cir. 1983), a case in which the plaintiff had pleaded claims for libel and invasion of privacy, *inter alia*. The district court in *Rinsley* determined that different periods of limitation should be applied to the claim of libel and the claim of invasion of privacy, in spite of the fact that the two claims for relief arose from the same facts and share some of the same elements. This result was termed an "anomaly," but was said to be dictated by the fact that the Kansas Supreme Court had recognized libel and invasion of privacy as separate torts. 446 F. Supp. at 858.

In the instant case, however, we have the authority of *Taylor* to consider as well as the general rule expressed in *Rinsley*. We conclude that *Taylor* is more authoritative because it is from the state appellate court and because its holding deals directly with the

---

[5]The latter point is somewhat exaggerated, as the two year statute of limitations for which Plaintiff argues does not specifically mention these theories. Rather, it is a catch-all category. See n.2, *supra*. But this does not detract substantially from Plaintiff's argument.

-10-

treatment of tortious interference claims which are founded on allegations of defamation. In the phrasing of *West v. American Telephone & Telegraph Co.*, we have no "persuasive data that the highest court of the state would decide otherwise." 311 U.S. at 237.

Accordingly, we hold that Plaintiff's state law claims are barred by limitations.

### C

Plaintiff's third claim was asserted under section 43(a) of the Lanham Act, and was centered on allegations that Defendant had circulated the reference sheet to others in the business. Aplt. App. 22-23. As the district judge succinctly explained, this provision of

> [t]he Lanham Act prohibits persons from making "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . (B) *in commercial advertising or promotion*, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . ." 15 U.S.C. § 1125(a)(1).

93 F. Supp.2d at 1168-69 (emphasis added).[6]

---

[6]Congress amended this section when it revised the Lanham Act in 1988. In more nearly complete form, the relevant section of the Act states:
>  Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –.
> . . .
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

As to the Lanham Act claim, the district judge concluded that Defendant was entitled to summary judgment because Plaintiff's evidence regarding the extent of distribution of the reference sheet was not sufficient to establish "commercial advertising or promotion" within the meaning of the Lanham Act's proscription of unfair competition. The court relied on *Garland Co. v. Ecology Roof Systems Corp.*, 895 F. Supp. 274, 277 (D. Kan. 1995), for its framework of analysis.[7] The fourth prong of the analysis adopted by the court, and the one on which its holding was based, focuses on whether the distribution of the alleged misrepresentations has been sufficient to constitute commercial promotion or advertising within the industry. *Id.* The judge concluded that here the Defendant had distributed the reference list to at least two, and possibly as many as seven, recipients. Because the evidence was that Plaintiff made at least 150 bids per year, the judge held that the distribution was too limited to be called advertising or promotion in the industry.

Plaintiff filed a Motion to Alter, Amend, or Set Aside Judgment under Fed. R. Civ.

shall be liable in a civil action by any person who believes that he or she is
or is likely to be damaged by such act.
15 U.S.C. § 1125(a)(1).

[7]The court in *Garland* adopted its analysis from *Gordon and Breach Science Publishers S.A. v. American Institute of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994). We have since adopted the same analysis. *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000). Judge VanBebber concluded that material issues of fact existed as to three parts of the analysis – whether the representations were commercial speech; whether the Plaintiff and Defendant were in competition; and whether the representations were made for the purpose of influencing consumers to buy Defendant's services. 93 F. Supp.2d at 1169.

-12-

P. 59(e) within ten days of entry of judgment. In this motion Plaintiff contended, as it does on appeal, that the district court erred in using the figure of 150 bids per year as a comparison with the seven alleged distributions of the reference list. Plaintiff argued that the seven distributions were sufficient to constitute promotion or advertising, contending that Plaintiff and Defendant were in competition only in the western half of Missouri and in Kansas. Plaintiff asserted that the fact that it submitted bids on over 150 projects per year in the nation was not relevant because of this restricted area of competition between the parties. The district court rejected Plaintiff's argument, stating that Plaintiff had produced "almost no evidence" of the size of the potential market for its services.

On appeal, Plaintiff makes the same argument regarding the size of the area in which Plaintiff and Defendant are in competition and alleges that the district judge erred in taking into account the estimated number of bids Plaintiff submitted annually. We agree with Defendant that our appellate jurisdiction does not extend to the district court's Order of June 8, 2000 rejecting Plaintiff's post-judgment motion because Plaintiff filed its notice of appeal before the district court had ruled on the motion and did not amend the notice after the motion had been denied. *See* Fed. R. App. P. 4(a)(4)(B). Accordingly, we may only consider Plaintiff's grounds for error in the original judgment. This was the judgment entered on April 24, 2000 as part of the Memorandum and Order granting the Defendant's motion for summary judgment. Memorandum and Order at 11, Aplt. App. at 365. However that original Memorandum and Order did discuss and

consider the Nelson deposition testimony about Plaintiff making at least 150 bids a year, holding that given that scale of Plaintiff's operation, Plaintiff's limited proof was insufficient to show a Lanham Act violation. That ruling and consideration of that deposition proof are properly reviewable based on the notice of appeal as filed, and we uphold that ruling for reasons stated herein.

Plaintiff focuses its argument on two cases from the Kansas federal district court, *Garland Co. v. Ecology Roof Systems Corp.*, 895 F. Supp. 274 (D.Kan. 1995); and *Classic Communications, Inc. v. Rural Telephone Service Co.*, 956 F. Supp. 910 (D.Kan. 1997), and a single case from another district court, *Mobius Management Systems, Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005 (S.D.N.Y. 1994). In *Garland*, the district court determined that a single letter delivered to one contractor did not constitute commercial advertising or promotion. 895 F. Supp. at 275. In *Mobius*, the district court determined that communication with a single prospective purchaser did come within the Lanham Act's restrictions on commercial advertising or promotion in the specific circumstances of the case, where the court found that the "true relevant purchasing public consisted solely" of the recipient of the offending letter. *Id*. at 1021.

Plaintiff argues that this case is different from *Garland* because it "alleged" more than one instance of unfair competition, in fact having "alleged that the false reference sheet was distributed to several" persons. Appellant's Corrected Opening Brief at 51-52. We conclude, however, that Plaintiff has failed to show evidence of sufficient

-14-

communications with any prospective customers or persons, such as architects, who might have influence over prospective customers. Plaintiff's reliance on mere allegations at this stage of the litigation is ineffective. On examining the record, we observe that the district judge was unusually lenient in considering Plaintiff's allegations. The crux of the matter is that Plaintiff failed to support its allegations with evidence.

With Defendant's motion for summary judgment, evidence was provided that Defendant had distributed the allegedly false reference list only to the contractor and architect on the Larned project. Aplt. App. 34; Aple. Supp. App. 31. The evidence was undisputed that these persons were not satisfied with Plaintiff's performance of the Larned contract. More importantly, Plaintiff provided no evidence of any other dissemination by Defendant of the reference list. Instead, Plaintiff's supporting materials suggested only surmise and conjecture. Providing details about the particular copy of the reference list sent to the Hutchinson School District, Plaintiff stated that Defendant was "the most likely source" of that copy. Aplt. App. 205. (The Hutchinson School District awarded a contract to Plaintiff in spite of having received the reference list. Supp. App. at 54.) Plaintiff never determined the source of the copy of the reference list sent to that school district. Aplt. App. 205. Plaintiff has identified only one contract which it was not awarded in spite of its having been the low bidder on the project, and Plaintiff has no evidence that the school involved in that project ever received a copy of the reference list. *Id*. at 189-90.

In sum the evidence – as opposed to the allegations – shows that Defendant gave copies of the reference sheet to the contractor who had already retained Plaintiff's services and the architect on that same project. We acknowledge that "the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion' . . . ." *Gordon & Breach Science Publishers v. American Institute of Physics*, 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994) (quoted in *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1274 (10th Cir. 2000)). Furthermore, we assume, *arguendo*, that the extent of distribution necessary to constitute commercial advertising or promotion in a particular case may be an elastic factor, so that a relatively modest amount of activity may be sufficient in the context of a particular case. *See American Needle & Novelty, Inc. v. Drew Pearson Marketing, Inc.*, 820 F. Supp. 1072, 1078 (N.D.Ill. 1993) ("The level of circulation required to constitute advertising and promotion will undeniably vary from industry to industry and from case to case."). Nevertheless, these terms by their plain, everyday meaning connote *some* level of *public* dissemination of information. *American Needle*, 820 F. Supp. at 1077-78.

We hold that Plaintiff's evidence of the extent of distribution was insufficient to defeat Defendant's motion for summary judgment. The distribution to two persons associated with the same project – a project on which Plaintiff had already been awarded the contract – simply does not, within the meaning of the Act, amount to commercial advertising or promotion and is not sufficient in the context of this case to establish a

Lanham Act claim.

The judgment of the district court is AFFIRMED.