**LARKIN GROUP, INC., Plaintiff,**

v.

**AQUATIC DESIGN CONSULTANTS, INC., et al., Defendants.**

No. 04–2154–JWL.

United States District Court, D. Kansas.

July 8, 2004.

1122

Andrew M. DeMarea, Jason L. Bush, Shughart Thomson &amp; Kilroy, Overland Park, KS, for Plaintiff.

Benny J. Harding, Overland Park, KS, Clifford A. Cohen, Robert E. Massengill, Cohen McNeile Pappas & Shuttleworth P.C., Leawood, KS, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Larkin Group, Inc. ("Larkin") filed this lawsuit against three of its former employees, defendants Tim Spiker, Kevin McElyea, and Joe Flanigan, and the new company that they formed, defendant Aquatic Design Consultants, Inc. ("Aquatic Design"). Plaintiff alleges that defendants Spiker, McElyea, and Flanigan unlawfully took materials from Larkin which they then used on behalf of Aquatic Design. The matter is presently before the court on defendants' motion to dismiss (doc. 14) plaintiff's Lanham Act claim. For the reasons explained below, the court will grant this motion in part and will deny it in part. Specifically, the court will grant the motion insofar as plaintiff's Lanham Act claim is based on a reverse-passing-off theory, and the court will deny the motion insofar as plaintiff's claim is based on a false advertising theory.

## FACTS

The following facts are taken from the allegations in plaintiff's complaint and, consistent with the well-established standards for evaluating motions to dismiss, the court assumes the truth of these facts for purposes of analyzing the motion to dismiss. Plaintiff has specialized in aquatic center planning and design for more than fifty years, and has developed distinctive and unique design methodologies and materials, including computer-generated drawings, designs, and pictures. Mssrs. McElyea and Spiker were employed by plaintiff as engineers until November 11, 2003. On or about November 16, 2003, Mr. Flanigan, who was still employed by plaintiff at that time,[1] unlawfully took from plaintiff a proposal and layouts pertaining to the city of Bonner Springs, Kansas. Mr. Flanigan took these materials to his home and sent them to Mssrs. McElyea and Spiker.

Defendants "then used the unlawfully removed materials in proposals" that they submitted to third parties who defendants knew were considering aquatic design proposals from plaintiff. Verified Compl. (doc. 1) ¶ 19, at 4. Defendants improperly adopted and promoted the materials as being property and projects of Aquatic Design. Specifically, defendants provided a proposal to the city of Republic, Missouri, that contained "false and untrue statements and . . . photos and other property belonging to [plaintiff]." Id. ¶ 23, at 5. The proposal misrepresented certain work as having been completed by defendants when in fact the work was completed by plaintiff. Aquatic Design was ultimately chosen to provide aquatic design services to the city of Republic. Defendants undertook similar activities with respect to plaintiff's efforts to obtain projects in Rose Hill, Kansas, and Bonner Springs, Kansas. According to plaintiff's complaint, "it is feared the defendants are undertaking additional actions in relation to a number of different projects." Id. ¶ 25, at 5.

Based on these allegations, plaintiff's complaint asserts claims for breach of employees' duty of loyalty, violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), unfair competition, conversion and replevin, tortious interference with prospective business relationships, injunctive relief, and equitable accounting. Defendants now move to dismiss plaintiff's Lanham Act claim on the grounds that the complaint fails to state a claim for reverse passing off or false advertising.

---

**1.** Mr. Flanigan ceased being an employee of plaintiff on November 17, 2003.

## STANDARD GOVERNING A MOTION TO DISMISS

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir.2001), *cert. denied*, 537 U.S. 823, 123 S.Ct. 109, 154 L.Ed.2d 33 (2002). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

## DISCUSSION AND ANALYSIS

■ For the reasons explained below, plaintiff's complaint fails to state a claim under a reverse-passing-off theory in light of the Supreme Court's opinion in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003), and its progeny. The court, however, is unable to conclude that it appears beyond a doubt that plaintiff cannot prove any set of facts that would entitle it to relief under the Lanham Act's false advertising provision.

### I. Reverse Passing Off

■ The Lanham Act imposes liability on "[a]ny person who, on or in connection with any goods or services ... uses ... any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion ... as to the origin ... of his or her goods [or] services." 15 U.S.C. § 1125(a)(1)(A). There are two basic types of false-designation-of-origin claims. One is passing off (or palming off, as it is sometimes called), which occurs when a person represents his or her goods or services as someone else's. *Dastar*, 539 U.S. at 28 n. 1, 123 S.Ct. 2041. The other is reverse passing off (or reverse palming off), which occurs when a person misrepresents someone else's goods or services as his or her own. *Id.* In this case, plaintiff's complaint attempts to state a claim for reverse passing off because it alleges that defendants misrepresented plaintiff's goods or services as their own. Defendants contend the allegations in plaintiff's complaint cannot state a claim for reverse passing off in light of the Supreme Court's decision in *Dastar*. The court agrees.

*Dastar* arose from the creation of a 1948 television series entitled the Crusade in Europe ("the Crusade"), which was about the allied campaign in Europe during World War II. *Id.* at 25, 123 S.Ct. 2041. Twentieth Century Fox Film Corporation ("Fox") acquired the rights to the Crusade and, in turn, SFM Entertainment ("SFM") and New Line Home Video, Inc. ("New Line") acquired from Fox the exclusive rights to distribute the Crusade on video. *Id.* SFM and New Line repackaged the series on videotape and distributed it. *Id.* at 26, 123 S.Ct. 2041. In 1995, Dastar purchased tapes of the original version of the Crusade (which was in the public domain), copied them, edited them, created new packaging, titled the video set World War II Campaigns in Europe (the "Campaigns"), and manufactured and sold the Campaigns video set as its own exclusive

product without attributing any credit to the Crusade television series. *Id.* at 26–27, 123 S.Ct. 2041. Fox, SFM, and New Line filed suit alleging, among other things, that Dastar's sale of the Campaigns video set constituted reverse passing off in violation of § 43(a) of the Lanham Act. *Id.* at 27, 123 S.Ct. 2041. The Court summarized the gravamen of plaintiff's claim, which was that Dastar made a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods." *Id.* at 31, 123 S.Ct. 2041. The issue in the case, at bottom, was what is meant by the "origin" of goods under § 43(a). *Id.* The Court was quick to acknowledge that plaintiffs' claim "would undoubtedly be sustained if Dastar had bought some of New Line's Crusade videotapes and merely repackaged them as its own." *Id.* Instead, though, Dastar's alleged wrongdoing was "vastly different" because Dastar took a creative work in the public domain (the Crusade television series), copied it, made minor modifications, and produced its own series of videotapes." *Id.* The Court explained that "as used in the Lanham Act, the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that the 'goods' embody or contain." *Id.* at 32, 123 S.Ct. 2041. The Court reasoned that "origin" in § 43(a) should not be read to create a cause of action for plagiarism by requiring attribution of uncopyrighted materials. *Id.* at 35–36, 123 S.Ct. 2041. In conclusion, the Court held that the phrase "origin of goods," as used in § 1125(a)(1)(A), "refers to the producer of tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37, 123 S.Ct. 2041. This definition of "origin of goods" is "in accordance with the [Lanham] Act's common-law foundations (which

were *not* designed to protect originality and creativity), and . . . the copyright and patent laws (which *were* )." *Id.* (emphasis in original).

One of the first cases to apply the Supreme Court's holding in *Dastar* was *Williams v. UMG Recordings, Inc.*, 281 F.Supp.2d 1177 (C.D.Cal.2003). In *Williams*, the plaintiff alleged that the defendant engaged in reverse passing off under the Lanham Act by misattributing (in film credits) the authorship and direction of a film solely to other individuals. *Id.* at 1181. The district court had originally denied the defendant's motion for summary judgment on this claim, but on reconsideration in light of the Supreme Court's holding in *Dastar* the district court explained that it was confronted with a claim that was materially identical to the plaintiff's claim in *Dastar.* The district court explained that

> *Dastar* makes clear that a claim that a defendant's failure to credit the plaintiff on the defendant's goods is actionable only where the defendant literally repackages the plaintiff's goods and sells them as the defendant's own—not where, as here, Defendants are accused only of failing to identify someone who contributed not goods, but ideas or communications (or, for that matter, "services") to Defendants' product.

*Id.* at 1183–84. Accordingly, the district court granted summary judgment in favor of the defendants on the plaintiff's reverse passing off claim. *Id.* at 1185; *see also Bob Creeden & Assocs. v. Infosoft, Inc.*, 326 F.Supp.2d 876, 879–80, 2004 WL 830456, *2–3 (N.D.Ill.2004) (dismissing a reverse-passing-off claim where the defendant marketed and sold a software system, giving customers the false impression that the system was its own, because the defendant was in fact the origin of the system even though the system was allegedly di-

rectly derived from the plaintiff's system); *Carroll v. Kahn,* No. 03–CV–0656, 2003 WL 22327299, at *5–*6 (N.D.N.Y. Oct. 9, 2003) (holding the plaintiff's complaint stated a claim for reverse passing off insofar as it alleged that defendants repackaged plaintiff's product as their own, but that plaintiff's claim was foreclosed by *Dastar* insofar as plaintiff alleged that defendants did not give plaintiff proper credit as author and/or producer); *Boston Int'l Music, Inc. v. Austin,* No. 02–12148–GAO, 2003 WL 22119228, at *2 (D.Mass. Sept. 12, 2003) (dismissing a reverse-passing-off claim against the defendant for failing to attribute credit to the plaintiff for creating a portion of a song).

Perhaps the most persuasive decisions in the wake of *Dastar* involving facts similar to those alleged in this case are *Bretford Manufacturing, Inc. v. Smith System Manufacturing Co.,* 286 F.Supp.2d 969 (N.D.Ill.2003), and *Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.,* 299 F.Supp.2d 565 (E.D.Va. 2004). In *Bretford Manufacturing,* the court had initially ruled that the defendant had violated the Lanham Act by engaging in reverse passing off when it used a leg from a table manufactured by the plaintiff as part of a table the defendant had submitted to a potential buyer as a sample. 286 F.Supp.2d at 970. In light of the Supreme Court's opinion in *Dastar,* however, the district court granted the defendant's motion for reconsideration. *Id.* at 973. The court explained that the sample table was not the good offered for sale, but even if the sample table was considered to be the good that was sold, there was no misrepresentation as to the "origin" of the sample. *Id.* at 971–72. The origin of the sample table was the defendant, and it made no difference that the defendant acquired the table legs from the plaintiff. *Id.* at 972. Similarly, in *Tao of Systems Integration,* the plaintiff alleged, much as Larkin does here, that the defendant made

false and misleading misrepresentations in a proposal. *Id.* at 572. The district court reasoned that the proposal was not a good or service, but even if it were a good or service the plaintiff did not allege that the plaintiff actually produced the proposal. *Id.* Instead, the plaintiff claimed that the defendant, in producing the defendant's own proposal, incorporated ideas or concepts that belonged to the plaintiff, and this "is precisely the type of allegation that the Supreme Court rejected as the basis for a reverse-passing-off claim in *Dastar.*" *Id.* Accordingly, the court dismissed the plaintiff's reverse-passing-off claim. *Id.*

In this case, plaintiff's reverse-passing-off claims are materially identical to those at issue in *Dastar, Bretford Manufacturing,* and *Tao.* Plaintiff is essentially claiming that defendants took plaintiff's uncopyrighted and unpatented ideas and concepts, edited and repackaged them, and passed them off as their own without attributing any credit to plaintiff. As was the case in *Bretford Manufacturing* and *Tao,* the court is unpersuaded as a threshold matter that the proposals defendants submitted to the cities of Republic, Rose Hill, and Bonner Springs constitute "tangible goods [or services] that are offered for sale." *Dastar,* 539 U.S. at 37, 123 S.Ct. 2041. Even if those proposals are, however, considered goods or services offered for sale within the meaning of *Dastar,* in this case plaintiff does not allege that plaintiff actually produced those proposals. Instead, plaintiff alleges that defendants took plaintiff's materials and incorporated them into defendants' proposals without attributing any credit to plaintiff. Thus, the "origin" of the proposals was actually defendants, not plaintiff. Even if plaintiff authored some of the ideas and concepts embodied in those proposals, the Lanham Act does not provide protection for such plagiarism, i.e., "the use of oth-

erwise unprotected works and inventions without attribution." *Id.* at 36, 123 S.Ct. 2041 (explaining that § 43(a) of the Lanham Act does not provide a cause of action for plagiarism).

Notwithstanding the significance of the Supreme Court's decision in *Dastar,* plaintiff nevertheless contends that the court should focus on the language of the statute which imposes liability for misrepresentations *"in connection with* any goods or services." 15 U.S.C. § 1125(a)(1) (emphasis added). This verbiage, however, is a part of the introductory prelude to § 1125(a)(1). The Court's decision in *Dastar* rested on the much more narrow issue of the meaning of the word "origin" in subparagraph (A), which is the subparagraph that provides the statutory basis for reverse-passing-off claims. Because the conduct alleged here is not the type of conduct prohibited by subparagraph (A), the broader language of the prelude to paragraph (a)(1) is of no consequence. Plaintiff's reliance on pre-*Dastar* case law is unpersuasive, as *Dastar* significantly restricts the types of claims that may formerly have been cognizable under a reverse-passing-off theory. *See generally* 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:77.1, at 27–145 to 27–152 (4th ed.2004) (discussing the significance of the Supreme Court's decision in *Dastar* ); 1 Charles E. McKenney & George F. Long, III, Federal Unfair Competition: Lanham Act § 43(a), § 3:10, at 3–112 to 3–115 (2004) (same). As the Supreme Court explained in *Dastar,* to the extent plaintiff may have a remedy under federal law, it must be found in copyright law, patent law, or the false advertising provisions of the Lanham Act. *Dastar,* 539 U.S. at 37, 123 S.Ct. 2041.

## II. False Advertising

■ Section 43(a) of the Lanham Act imposes liability against a person who "in commercial advertising or promotion, mis-

represents the nature, characteristics, qualities, or geographical origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To state a claim for false advertising under this provision, a plaintiff must plead the following elements:

(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) [injury to] the plaintiff.

*Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1252 (10th Cir.1999) (internal citations omitted); *accord Proctor & Gamble Co. v. Haugen,* 222 F.3d 1262, 1273–74 (10th Cir.2000). Defendants argue that plaintiff's complaint does not allege the first of these elements, which is that the alleged representations were made "in commercial advertising or promotion" because the representations were not disseminated sufficiently to the relevant purchasing public.

■ In order for representations to constitute commercial advertising or promotion under the Lanham Act, those representations must, among other things, "be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Proctor & Gamble,* 222 F.3d at 1273–74 (quoting *Gordon & Breach Science Publishers, S.A. v. Am. Inst. of Physics,* 859 F.Supp. 1521, 1535–36 (S.D.N.Y.1994), and citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 734 (9th Cir.1999), and *Seven–Up Co. v. Coca–Cola Co.,* 86 F.3d 1379, 1384 (5th Cir.1996)). In further attempting to define the concept of commercial advertising or promotion with-

in the false advertising provision of the Lanham Act, the Tenth Circuit has stated that

> the representations need not be made in a classic advertising campaign, but may consist instead of more informal types of promotion. Furthermore, we assume, *arguendo*, that the extent of distribution necessary to constitute commercial advertising or promotion in a particular case may be an elastic factor, so that a relatively modest amount of activity may be sufficient in the context of a particular case. Nevertheless, these terms by their plain, everyday meaning connote *some* level of *public* dissemination of information.

*Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1004–05 (10th Cir.2002) (internal quotations and citations omitted; emphasis in original).

What, precisely, the Tenth Circuit necessarily meant by "public" dissemination is not crystal clear from the statements made by the Court in *Sports Unlimited.* The Lanham Act false advertising claim at issue in that case arose from the allegation of the plaintiff, who was a gymnasium flooring installer and supplier, that the defendant, who was one of the plaintiff's competitors, had distributed to others in the business a reference sheet describing some customers' unfavorable comments about the plaintiff's work. Ultimately, the evidence revealed that the plaintiff made at least 150 bids per year and only "gave copies of the reference sheet to the contractor who had already retained Plaintiff's services and the architect on that same project." *Id.* at 1003–04. The Tenth Circuit held that this was insufficient to constitute commercial advertising or promotion "in the context of this case." *Id.* at 1005. The Court's reasoning on this issue comports with the widely followed rule of law announced by the district court in *Gordon & Breach* and adopted by the Tenth Circuit in *Proctor & Gamble* that whether representations constitute commercial advertising or promotion within the meaning of the Lanham Act depends upon whether those representations were sufficiently disseminated to the relevant purchasing public. Thus, the term "public," as used by the Tenth Circuit in *Sports Unlimited,* appears to connote not the general public but rather the relevant purchasing public, which is consistent with holdings from other Courts of Appeals that have addressed this issue. *See, e.g., NXIVM Corp. v. Ross Institute,* 364 F.3d 471, 482 (2d Cir.2004) (observing that the touchstone of the inquiry is whether the "representations are part of an organized campaign to penetrate the relevant market" (quotation omitted)); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 734–35 (9th Cir.1999) (affirming a jury verdict that the defendant's representation to one client constituted dissemination to a sufficient segment of the relevant purchasing public where the evidence showed that the relevant potential purchasers consisted of only two or possibly three institutions); *Seven–Up Co. v. Coca–Cola Co.,* 86 F.3d 1379, 1386 (5th Cir.1996) (affirming the district court's judgment that the defendant's sales presentation to eleven soft drink bottlers constituted commercial advertising or promotion where the relevant purchasing public consisted of seventy-four bottlers).

In this case, plaintiff's complaint alleges that defendants submitted proposals to three different members of the relevant purchasing public. The complaint does not, however, provide enough information for the court to ascertain the extent and nature of the relevant purchasing public for the aquatic design services industry. The court can reasonably infer that the customer base for aquatic design services may very well be limited to only several customers, particularly during the relevant period of time. It can also reasonably be

inferred that proposals such as those at issue here are a common method of promoting aquatic design services. Therefore, the court cannot conclude that it appears beyond a doubt that plaintiff cannot prove any set of facts entitling it to relief on this theory. Accordingly, defendants motion to dismiss is denied insofar as plaintiff's Lanham Act claim is based on a false advertising theory. *See, e.g., Tao of Systems Integration,* 299 F.Supp.2d at 573–74 (denying motion to dismiss where plaintiff's complaint alleged that the defendant had provided only one aeronautical engineering services proposal to NASA, and explaining that "it is reasonable to infer that in the aeronautical engineering industry, services are promoted through proposals to the relevant government agency").

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motion to dismiss plaintiff's Lanham Act claim (doc. 14) is granted in part and denied in part.